IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-00853-PAB

WILLIAM JOSEPH DENO,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on the Complaint and Petition for Review [Docket No. 1] filed by plaintiff William Joseph Deno on March 21, 2019. Plaintiff seeks review of the final decision of defendant Andrew Saul (the "Commissioner")[1] denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-34, 1381-83f. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).[2]

**I. BACKGROUND**

In July 1, 2015, plaintiff filed an application for disability insurance benefits

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Accordingly, Mr. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as defendant in this lawsuit. *See* Fed. R. Civ. P. 25(d).

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

("DIB") under Title II of the Act and an application for Supplemental Social Security Income under Title XVI of the Act. R. at 217-19. He alleged a disability onset date of October 29, 2014. R. at 258. The Social Security Administration denied plaintiff's claim on February 11, 2016. R. at 135-37. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on March 21, 2018. R. at 26. On May 11, 2018, the ALJ issued a decision denying plaintiff's claim. R. at 9. The ALJ found that plaintiff met the insured status requirements of the Act through March 31, 2017 and had not engaged in substantial gainful activity since his alleged disability onset date of October 29, 2014. R. at 14. The ALJ also determined that, through the date last insured, plaintiff had the following severe impairments: myocardial infarction and obstructive sleep apnea. *Id.* The ALJ found that these impairments, taken together, did not meet or medically equal the severity of one of the regulations' listed impairments. R. at 15. As a result, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [T]his claimant can lift and carry twenty pounds occasionally and ten pounds frequently. This claimant could sit for six hours in an eight-hour workday and stand or walk for six hours in an eight-hour workday. This claimant can push and pull the same as he can lift and carry. This claimant can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. This claimant is capable of frequent stopping, crouching, kneeling and crawling. This claimant should never be exposed to unprotected heights.

R. at 15. The ALJ determined that plaintiff was unable to perform his past relevant work as a satellite antenna installer. R. at 19. However, the ALJ found that there were

jobs that existed in significant numbers in the national economy that plaintiff could perform, such as a fast food worker, a cashier, or a small products assembler. R. at 20. Ultimately, the ALJ concluded that plaintiff was not disabled from October 29, 2014, through the date of his decision – May 11, 2018. *Id.*

On January 17, 2019, the Appeals Council denied review of plaintiff's claim. R. at 1. Accordingly, the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court must not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's

findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. THE FIVE-STEP PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  ANALYSIS

Plaintiff argues that the ALJ committed reversible error by (1) rejecting the opinion of Dr. Laurence Berarducci, a treating physician, without a valid basis, Docket No. 15 at 10; and (2) not having legitimate reasons to reject the opinion of Dr. Timothy Moser, a consultative examining physician.  *Id.* at 18.

### A.  Evaluating the Opinions of Treating Physicians

"[C]ase law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a

claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). In the first step, the ALJ must consider whether the treating physician's opinion is entitled to controlling weight. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996).[3]

If the opinion is not given controlling weight, the ALJ will proceed to the second step of the inquiry. In the second step, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, *4. The factors that must be applied in determining what weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's

---

[3] In 2017, the regulations were changed to no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c. Because plaintiff's claim was filed before 2017, the former regulations apply. *See* 20 C.F.R. § 404.1527 ("Generally, we give more weight to medical opinions from your treating sources.").

attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c). "[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations omitted). Failure to apply this analytical framework and to provide sufficiently specific, legitimate reasons tied to the factors for the weight given to a treating physician's opinion warrants reversal. *Watkins*, 350 F.3d at 1300-01.

### B. Dr. Laurence Berarducci

Dr. Laurence Berarducci, a treating physician, opined that plaintiff "could lift between twenty-five pounds and fifty pounds maximum for up to one-third of an eight-hour workday and carry ten to twenty pounds maximum for up to one-third of an eight-hour workday; could be on his feet for one to two hours at a time and four to six hours in an eight-hour workday; must avoid working at unprotected heights; and would be off-task more than thirty percent of the work week due to his memory impairments." R. at 18. The ALJ gave Dr. Berarducci's opinion "little weight." *Id.* The ALJ found that Dr. Berarducci's opinion was not consistent with the record as a whole, including Dr. Berarducci's own records. *Id.*

Plaintiff argues that the ALJ did not give sufficient reasons for "essentially

rejecting"[4] the opinion of Dr. Berarducci, a treating physician. Docket No. 15 at 12. Specifically, plaintiff contends that (1) the ALJ's statement that Dr. Berarducci's opinion is not consistent with the record is "too general," *id.*; (2) the ALJ improperly relied on evidence of plaintiff's daily activities and walking habits, which plaintiff argues are not inconsistent with Dr. Berarducci's opinions, *id.* at 13-15; (3) it was erroneous for the ALJ to find that plaintiff's physical examinations rendered generally normal findings., *id.* at 16; and (4) the ALJ ignored the fact that Dr. Berarducci is a treating specialist. *Id.* at 17.

### 1. General Opinion

Plaintiff argues that the ALJ's statement that Dr. Berarducci's opinion "is not consistent with the record as a whole, including the provider's records as a whole," R. at 18, is "an unsupported and unexplained conclusion" that "cannot support the ALJ's dismissal . . . of a physician's opinion." Docket No. 15 at 12. The Court is not convinced by plaintiff's argument. The Court reads the ALJ's conclusion that Dr. Berarducci's opinion is inconsistent with the record as an introductory sentence – i.e., that the ALJ will go on to highlight and explain those portions of the records in which the ALJ finds an inconsistency. As plaintiff concedes, "[t]he rest of the ALJ's explanation gets more specific." Docket No. 15 at 12; *see also* R. at 18. The Court does not find reversible error here.

### 2. Plaintiff's Daily Activities

---

[4] The Tenth Circuit has equated assigning "little weight" to a physician's opinions as an effective rejection of those opinions. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

8

Plaintiff argues that the ALJ "rejected [Dr. Berarducci's] entire opinion because plaintiff's activities and walks contradict [Dr. Berarducci's] restrictions" and asserts that this was in error. Docket No. 15 at 13. Specifically, plaintiff suggests that his "testimony about his walking is more nuanced than the ALJ's summary suggests," *id.*, and argues that it was erroneous for the ALJ to rely on plaintiff's activities in finding Dr. Berarducci's opinion inconsistent with the record because his activities are "not necessarily inconsistent with [Dr. Berarducci's] . . . restrictions." *Id.* at 14.

The Court finds that plaintiff's argument essentially boils down to a contention that the ALJ made errors in weighing the evidence and a request that the Court reconsider and reweigh that evidence. The Court cannot do so. *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009) (A court "may not reweigh the evidence or try the issues de novo in order to advance a different view."). The Court is empowered only to review whether the ALJ's decision is supported by substantial evidence, *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the sufficiency of the evidence, not its weight."), or, in other words, whether the decision is supported by "relevant evidence [that a] reasonable mind might accept as adequate to support a conclusion." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

With respect to plaintiff's argument that his testimony concerning his walking is "more nuanced" than the ALJ set forth in his order, plaintiff notes, at the hearing, he explained that he breaks his eight-mile walks into two four-mile walks, and that each walk takes approximately two hours to complete. Docket No. 15 at 13. Plaintiff asserts that this evidence "does not contradict [Dr. Berarducci's limitation of plaintiff's] four to

9

six-hour walking capacity." *Id.* at 14. However, the fact that plaintiff explained his walking activity in a way that does not contradict Dr. Berarducci's stated restrictions does not mean that the ALJ's conclusion is not supported by substantial evidence. Dr. Berarducci stated in his limitations report that plaintiff experienced "constant" fatigue and that plaintiff would "fatigue excessively" if on his feet for more than one or two hours at a time. R. at 978-79. However, other reports, including reports from Dr. Berarducci, do not include any reports of fatigue. *See, e.g.*, R. at 696 (Dr. Berarducci stating that plaintiff was "[d]oing well," "[d]oing lots of home remodeling [without] problem," and had "[n]o [cardiovascular] complaints"); R. at 934, 941 (plaintiff denying fatigue). The ALJ cited a number of these reports in finding that Dr. Berarducci's limitations were not consistent with the record. *See* R. at 18. While the ALJ did not cite all of these records, this does not warrant reversal. "[W]hile an ALJ must consider all of the evidence in the record, nothing requires the discussion of every piece of evidence." *Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013) (unpublished). The Court finds that the ALJ's finding was based on evidence that a reasonable person might accept as adequate to support a conclusion, and finds no error here. *See Bainbridge v. Colvin*, 618 F. App'x 384, 390 (10th Cir. 2015) (finding that the ALJ reasonably concluded that a physician's opinions were inconsistent with the physician's own records where the physician's "own treatment notes consistently showed normal physical exams and contained statements and diagnoses that did not square with his

opinion" and where the ALJ referenced a number of those statements in the decision).[5]

"The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision." *Thomas v. Colvin*, 37 F. Supp. 1193, 1196 (D. Colo. 2014). For the reasons set forth above, the Court finds that the ALJ's decision was supported by substantial evidence and will not reverse the ALJ's decision on this basis.

### 3. "Generally Normal" Physical Examination Findings

Plaintiff argues that the ALJ erred when he concluded that, during physical examinations, plaintiff was found to have generally normal findings, because "the existence of generally normal findings does not contradict [Dr. Berarducci's] opinions."

---

[5] In addition, plaintiff argues that the ALJ erred in relying on plaintiff's daily activities to find that Dr. Berarducci's report was inconsistent with the record because plaintiff's "personal care, household chores, and undefined remodeling" activities are not inconsistent with Dr. Berarducci's limitations. Docket No. 15 at 14. However, the ALJ did not rely upon plaintiff's daily self-care or chore-based activities in finding inconsistencies between Dr. Berarducci's report and the record. *See* R. at 18 (finding that the record demonstrated that plaintiff could "engage in other *physical* activity without difficulty") (emphasis added). To the extent that the ALJ's reference to plaintiff's physical activity can be read as a reference to plaintiff's home remodeling projects, plaintiff argues that his "remodeling activity is also much more nuanced that the ALJ suggests" because plaintiff testified at the hearing that his home remodeling consisted of advising his father about how to remodel a home. Docket No. 15 at 15. Again, plaintiff asks the Court to reweigh the evidence here, which the Court declines to do. *Wall*, 561 F.3d at 1069. In his decision, the ALJ cited a report from Dr. Berarducci indicating that, in the context of discussing plaintiff's cardiac condition, plaintiff was "[d]oing lots of home remodeling [without] problem." R. at 696. Insofar as the ALJ's decision can be read as a finding that plaintiff's explanation of his home remodeling was not credible, the Court "defer[s] to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec. of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

Docket No. 15 at 16. Plaintiff asserts that, "if the 'normal' exam findings are so informative of the level of restriction, the ALJ surely would not have issued a more restrictive lifting limitation than [Dr. Berarducci] issued."[6] *Id.* at 16. Again, in so arguing, plaintiff necessarily asks the Court to reweigh the evidence before the ALJ; plaintiff does not assert a legal basis for this argument or argue that the ALJ applied the wrong legal standard in issuing his lifting restrictions, *see id.*, but instead argues that the ALJ must have improperly weighed Dr. Berarducci's restriction opinions. The Court determines only whether the ALJ's conclusion was supported by substantial evidence. *Oldham*, 509 F.3d at 1257.

The Court finds that there is substantial evidence in the record, including evidence cited by the ALJ, which indicates "normal" results from plaintiff's physical testing. *See, e.g.*, R. at 461; R. at 595-600, R. at 904, R. at 952 (stating that plaintiff did "extremely well" on an echocardiography stress test). In addition, earlier in his decision, the ALJ extensively discussed plaintiff's three-year history of cardiovascular testing, noting that, generally, the testing revealed normal findings. *See* R. at 15-17. This evidence supports the ALJ's conclusion that the ALJ's restrictions were not consistent with plaintiff's examination reults. *See Rose v. Colvin*, No. 14-cv-00789-RM, 2016 WL 660113, at *9 (D. Colo. Feb. 18, 2016) (finding that substantial evidence supported ALJ's finding that physician's opinion was not consistent with the record

---

[6] Dr. Berarducci opined that plaintiff could lift 25 to 50 pounds for up to one-third of the work day, R. at 978, while the ALJ found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently. R. at 15. Plaintiff does not challenge the ALJ's findings on lifting restrictions. *See* Docket No. 15.

12

where, "although not identified in specific relation to [the physician's] opinion, reference to Plaintiff's treatment and work history is sufficiently specific elsewhere in the ALJ's decision.").  The Court finds the ALJ did not err in basing his inconsistency finding on these medical records because he cited substantial evidence in support of his conclusion.  *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (A court must affirm if "there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion.") (quotation omitted).

In the alternative, plaintiff asserts that "the ALJ's explanation [of his finding that Dr. Berarducci's limitations were inconsistent with the record] only identified the results of the cardiovascular and lung evaluations as being the specific exam findings that undermine [Dr. Berarducci's] entire opinion," but that "[n]othing about those normal findings" relates to Dr. Berarducci's stated limitations in memory and thinking.  Docket No. 15 at 17; *see also id.* at 15-16 (making a similar argument).  But, as set forth above, an ALJ need not discuss every piece of evidence.  *Sullivan*, 519 F. App'x at 989.  In his decision, the ALJ cites to a number of reports from Dr. Berarducci in which Dr. Berarducci does not mention any complaints from plaintiff concerning memory issues.  *See, e.g.*, R. at 696-98; R. at 933-36.  And while Dr. Berarducci opined in one report that plaintiff "ha[d] persistent low grade cognitive issues post cardiac arrest," *see* R. at 946, the overwhelming majority of Dr. Berarducci's notes make no reference to such cognitive issues.  *See, e.g.*, R. at 933 (discussing plaintiff's symptoms and stating that plaintiff "has no other current complaints"); R. at 938-39; R. at 944-45; R. at 981-82.  While the ALJ's decision would have been more thorough had he expressly referenced

the evidence concerning plaintiff's cognitive limitations, the Court finds that the ALJ's failure to do so does not constitute reversible error. "Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court finds that this portion of the ALJ's decision is supported by substantial evidence.

### *4. Dr. Berarducci's Specialist Status*

Finally, plaintiff argues that the ALJ "ignored the fact that Dr. Berarducci is a treating specialist." Docket No. 15 at 17. That a physician is a specialist is one factor to consider when assigning weight to that physician's opinion. 20 C.F.R. § 404.1527(c)(5). However, the ALJ need not expressly discuss each factor. *Oldham*, 509 F.3d at 1258. Here, the ALJ mentioned that Dr. Berarducci is a treating physician, R. at 18, and, when discussing plaintiff's November 2017 appointment with Dr. Berarducci, the ALJ referred to the appointment as a "cardiology examination." R. at 17. The Court is not convinced that the ALJ's failure to expressly identify Dr. Berarducci as a cardiologist evidences a failure to consider his speciality and finds that this is not reversible error.

### C. Dr. Timothy Moser

Plaintiff challenges the ALJ's discussion of the opinion of Dr. Timothy Moser, a consultative examining physician. Docket No 15 at 18. Dr. Moser opined that plaintiff could stand or walk up to four hours in an eight-hour workday, had no sitting restrictions, could lift and carry twenty pounds occasionally and ten pounds frequently,

and could occasionally climb, balance, stoop, kneel, crouch, and crawl.  R. at 18.  The ALJ gave Dr. Moser's opinion "moderate weight," finding it "somewhat consistent with the record as a whole."  *Id.*  The ALJ determined that Dr. Moser "found the claimant was more limited with standing and walking than the objective evidence indicates," because the record showed that plaintiff "was able to perform various physical activities without difficulty" and because the record demonstrated "generally normal cardiovascular findings."  *Id.*  Plaintiff challenges the ALJ's classification of the cardiovascular findings as "normal" and appears to argue that there is no basis for the ALJ adopting Dr. Moser's lifting restriction while rejecting his standing or walking restrictions.  Docket No. 15 at 20.  Plaintiff also challenges the ALJ's reliance on plaintiff's daily activities to reject Dr. Moser's opinions.  *Id.* at 21.

To the extent that plaintiff argues that the ALJ improperly relied on plaintiff's daily activities in finding Dr. Moser's opinion somewhat inconsistent with the record, the Court rejects this argument for the reasons it rejected plaintiff's same argument with respect to Dr. Berarducci: (1) contrary to plaintiff's argument, the ALJ did not rely on plaintiff's self-care or chore activities in finding inconsistencies in the record, *see* R. at 18; (2) the Court cannot reweigh the evidence in this case and finds that the ALJ's decision was supported by substantial evidence, which the ALJ cited in his order, *id.*; and (3) the Court defers to the ALJ's credibility determinations.  *Casias*, 933 F.2d at 801.  Moreover, the Court rejects plaintiff's argument that the ALJ erroneously classified plaintiff's cardiovascular findings as "normal" for the same reasons it rejected plaintiff's substantially similar argument concerning Dr. Berarducci's opinions.  The

Court will not accept plaintiff's invitation to reweigh the evidence, *see* Docket No. 15 at 20 (arguing that certain evidence undermines the ALJ's classification of "normal" findings), and has already determined that the ALJ's finding was based on substantial evidence, which was cited and extensively discussed by the ALJ in his decision. *See Ellison*, 929 F.2d at 536; *Rose*, 2016 WL 660113, at *9.

In the alternative, plaintiff argues that, "even if the cardiovascular findings were normal, that does not explain why the ALJ found Dr. Moser's lifting restriction credible but his standing/walking restrictions not credible." Docket No. 15 at 20. The Court assumes that plaintiff's argument is based on the fact that, while the ALJ's lifting restriction was identical to Dr. Moser's opinion, R. at 15; R. at 462, the ALJ rejected Dr. Moser's opinion that plaintiff could only stand or walk for four hours in an eight-hour workday, R. at 462, finding instead that plaintiff could stand or walk for six hours in an eight-hour work day. R. at 15. Plaintiff argues that the ALJ was required to explain why the limitation opinions that were not adopted were not credible, and explain why the lifting restriction, which was adopted, was credible. Docket No. 15 at 20.

However, the case that plaintiff relies upon for this argument, *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012), is inapplicable. In *Chapo*, the Tenth Circuit reversed an ALJ decision where the ALJ had failed to explain why one part of an uncontradicted medical opinion was credible and other parts not credible. *Id.* at 1292. Despite the fact that the physician's opinions were "not opposed by . . . any other medical source, much less a treating source to whom they could be presumptively subordinated" and the fact that the ALJ had not found that the physician's opinions "were inconsistent with his

16

associated examination and report or with other evidence identified from the record," the ALJ discounted the bulk of the physician's opinion, but accepted some portions, without explanation. *Id.* at 1291. The Tenth Circuit found that the ALJ's failure to adopt certain portions and reject all others without explanation to be an improper cherry-picking of the evidence. *Id.* at 1291-92.

But here, unlike *Chapo*, the ALJ found some inconsistencies between Dr. Moser's opinion and the record. R. at 18 (citing portions of the record that evidence normal cardiovascular findings and plaintiff's daily activities, which the ALJ found inconsistent with Dr. Moser's opinion); *see also* R. at 122-24 (Dr. Michael Canham stating that plaintiff could sit or stand for six hours in an eight-hour workday). Thus, unlike *Chapo*, Dr. Moser's opinion is not uncontradicted by the record, and the Court does not find that the ALJ's adoption of some, but not all, of Dr. Moser's restrictions constitutes "cherry-picking" of the evidence. While the Court agrees that a more thorough explanation would assist the Court in its review, the ALJ's failure to explain why he found Dr. Moser's lifting restrictions credible does not require reversal. "The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection." *Keyes-Zachary*, 695 F.3d at 1166. Given that the ALJ provided a sufficient explanation for his treatment of the bulk of Dr. Moser's opinion, the Court finds that reversal is not warranted because the Court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied." *Id.* The Court finds that the ALJ's weighing of Dr. Moser's opinion is supported by substantial evidence. For these reasons, the decision of the

Commissioner will be affirmed.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is

**AFFIRMED**. It is further

**ORDERED** that this case is closed.

DATED June 29, 2020.

                                        BY THE COURT:

                                        _____
                                        PHILIP A. BRIMMER
                                        Chief United States District Judge